UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEVIN BURNS,

    Plaintiff,

v.                                              Case No. 4:20cv541-WS-HTC

KILOLO KIJAKAZI, Commissioner
 of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Kevin Burns' ("Burns") amended complaint pursuant to 42 U.S.C. § 405(g) seeking review of the final determination of the Commissioner of Social Security ("Commissioner"), denying his application for child disability insurance benefits ("CIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34.[1]  ECF Doc. 17.  The matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(D).

---

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits ("SSI").  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  Thus, regardless of a whether a referenced statute herein addresses DIB or SSI, the legal principle at issue applies equally to Burns' claim.

Upon review of the record, the undersigned finds the Administrative Law Judge's ("ALJ") denial of CIB to be supported by substantial evidence and, thus, recommends the decision be AFFIRMED and Burns' filing titled a motion to amend, ECF Doc. 47, which seeks judgment in his favor, be DENIED.

**I.     BACKGROUND**

Burns was born on March 26, 1984. Tr. 45, 47.[2] On August 16, 2018, he filed an application for CIB with a disability onset date of July 1, 2004, Tr. 257-63, and alleging disability due to schizoaffective disorder, psychotic disorder, specific learning disability, bipolar disorder, post-traumatic stress disorder (PTSD), high blood pressure and knee and back pain. Tr. 312. The Commissioner denied Burns' application initially (Tr. 104-15, 156-58) and on reconsideration. Tr. 117-31, 162-67. On November 25, 2019, the ALJ issued an unfavorable decision. Tr. 133-150. Burns appealed the decision, and on January 10, 2020, the Appeals Council remanded the case back to the ALJ for adjudication of Burns' CIB claim under the appropriate rules and period at issue. Tr. 153-155.

On remand, the ALJ appointed attorney L. Jack Gibney to represent Burns (Tr. 249) and on August 12, 2020, the ALJ issued an unfavorable decision finding that Burns had not been under a disability prior to obtaining age 22. Tr. 13-25. The

---

[2] The administrative record filed by the Commissioner consists of 10 volumes (ECF Docs. 28-1 through 28-10) and has 1,568 consecutively numbered pages. References to the record will be by "Tr.," for transcript, followed by the page number.

Appeals Council denied Burns' request for review on September 17, 2020, and the ALJ's decision because the final determination of the Commissioner. Tr. 1-4.

## II.  THE ALJ'S FINDINGS

To be eligible for CIB, the Act requires a claimant who is 18 years or older and is not a full-time student, to be under "a disability that began before [the claimant] became 22 years old." 20 C.F.R. § 404.350(a)(5). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less twelve months." 42 U.S.C. §423(d)(1)(A); 20 C.F.R. § 404.1505(a). To qualify as a disability, the physical or mental impairment must be so severe that the claimant not only is unable to do her previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ applies the following five-steps:  (1) whether the claimant is performing substantial gainful activity, (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant has the residual functional capacity

("RFC") to perform his past work and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs in the national economy the claimant can perform. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012); 20 C.F.R. §404.1520(a)(4)(i)-(v).

Utilizing that 5-step process, the ALJ made the following findings relevant to the issues raised in this appeal:

- Born on March 26, 1984, Burns had not attained age 22 as of July 1, 2004, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).  Tr. 18.

- Although Burns engaged in substantial gainful activity (SGA) during the relevant time period, there was a continuous 12-month period(s) where Burns did not engage in SGA.  Tr. 19.

- Prior to attaining age 22, Burns had the following severe impairments: degenerative disc disease, osteoarthritis, PTSD, and bipolar disorder (20 CFR 404.1520(c)).  *Id.*

- Prior to attaining age 22, Burns did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  *Id.*

- Prior to attaining age 22, Burns had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. [Burns] should have no concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights. [Burns] is limited to performing work that needs little or no judgment to perform simple duties that can be learned on the job in a short time (up to and including 30 days). [Burns] is able to deal with the changes of routine work setting. [Burns] is able to relate adequately to supervisors; is limited to occasional coworker contact; and should have no contact with the general public.

Tr. 20.

- Prior to attaining age 22, considering Burns' education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Burns can perform (20 CFR 404.1569 and 404.1569a). Tr. 24.

- Burns has not been under a disability, as defined in the Act, at any time prior to March 25, 2006, the date he attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)). Tr. 25.

## III. STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something

'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Additionally, a federal court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court, however, may not look "only to those parts of the record which support the ALJ[,]" but also "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

## IV.    ANALYSIS

Burns timely filed this action for judicial review on November 16, 2020, ECF Doc. 1, and, at the Court's direction, filed an amended complaint in February 2021, ECF. Doc. 17, on this Court's forms. After the Commissioner filed an answer and the transcript, the Court entered an order directing the parties to file supporting memorandum. ECF Doc. 29. After the entry of a show cause order, ECF Doc. 31, Burns filed a supporting memorandum, which consists of the letter brief Burns' prior counsel, Gibney, submitted to the Appeals Council, various medical records, and an

entirely incoherent document that the undersigned presumes was written by Burns and intended to be Burns' argument in support of the amended complaint. ECF Doc. 32. Subsequently, Burns submitted another 80 pages of nonsensical information and argument, which was docketed as a supplement.[3]  ECF Doc. 36.

Neither of Burns' submissions comply with this Court's order requiring Burns to identify with specificity and citations to the record the issues on appeal. ECF Doc. 29 at 2. In fact, the undersigned cannot discern from anything Burns has submitted what errors Burns seeks to have this Court consider. It is, of course, Burns' job and not the Court's to scour the record and identify incidents of error by the ALJ. *See Carmickle v. Commissioner of Social Security Administration,* 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address challenge to ALJ's finding where claimant "failed to argue th[e] issue with any specificity in [ ] briefing") (citation omitted); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (appellate courts "review only issues which are argued specifically and distinctly in a party's opening brief.") (citations omitted).

Nonetheless, because Burns is proceeding *pro se*, the undersigned interpreted Burns' submissions indulgently, and agrees with the Commissioner that Burns appears to argue, as he did before the Appeals Council, that he did "not possess even

---

[3] Indeed, since filing the action, Burns has filed one nonsensical document after another, including documents oftentimes filled with unnecessary profanity, resulting in an admonishment from the Court. *See* ECF Doc. 37.

Case No. 4:20cv541-WS-HTC

a sedentary residual functional capacity because of his ongoing mental health impairments." ECF Doc. 32 at 2, Tr. 492. To support this argument, Burns relies primarily on a 2001 suicide attempt. Even reading Burns' memorandum liberally, however, the undersigned finds the ALJ's decision to be supported by substantial evidence.

As stated above, the ALJ determined that, prior to attaining 22 years of age, Burns had the RFC to perform light work, except that he is limited to performing work that needs little or no judgment to perform simple duties that can be learned on the job in a short time (up to and including 30 days). Tr. 20. The ALJ also determined that Burns could deal with changes of a routine setting, could have occasional interaction with co-workers, and could relate adequately to supervisors, but should have no contact with the general public. *Id.*

A claimant's RFC "is the most [he or she] can still do despite [his or her] limitation." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 CFR § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5 (July 2, 1996); *see also, Swindle v. Sullivan*, 914 F. 2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545). Additionally, the ALJ is required to assess the claimant's RFC based on all of the

relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). The ALJ's assessment must identify and describe specific medical and nonmedical evidence that supports his conclusion. SSR 96-8p.

Based on a review of the medical evidence, the undersigned finds the ALJ's RFC is supported by substantial evidence. First, despite Burns' 2001 suicide attempt and an onset date of 2004, as discussed below, the record is devoid of any mental health treatment until 2006. Even then, however, the treatment notes do not show that Burns' "impairments were disabling or prevented him from performing work in accordance with the [RFC] prior to attainment of age 22." Tr. 23.

Burns visited Premier Community Healthcare Group, Inc. ("Premier") four (4) times from January 2006 to March 2006. Tr. 857, 514, 515, 516. On January 30, 2006, Burns was seen at Premier for "follow up treatment from mental health issues." Tr. 857. Burns reported getting paranoid "when he goes into a store [and] someone looks at him", that he "[g]ets angry easily", and he "never has . . . normal dreams." *Id.* Although the doctor reported Burns had suicidal and homicidal ideations, she also noted Burns had "normal psychomotor activity", coherent, logical, and organized thought content, and was "[a]lert [and] oriented x4." Tr. 857-58. The doctor further noted Burns' strengths were that he owns his own business, Burns Concrete, Inc., and he was healthy. *Id.* Burns was diagnosed with psychotic

disorder not otherwise specified, depressive disorder, and polysubstance abuse dependence (Tr. 858) and was prescribed Risperdol and Wellbutrin. *Id.*, Tr. 439.

On February 14, 2006, Burns returned to Premier and reported "things [were] much better with mood and suicidal thoughts" since taking Risperdol. Tr. 516. Indeed, Burns stated "[t]his is the best I have ever felt." *Id.* Burns also reported that he "feels so relaxed and not paranoid" and that he does not "get angry or aggravated with people." *Id.* Burns denied any suicidal ideations and stated, "I don't think I have even thought about it." *Id.* Burns also reported his homicidal ideations had "improved" and decreased "from all day . . . to every once in a while." *Id.* Despite being "fidgety", Burns maintained good eye contact, was cooperative, and was alert and oriented. *Id.*

Three days later on February 17, 2006, Burns left a telephone message for his doctor stating his Wellbutrin was not working and he was hearing voices. *Id.* Burns returned to Premier on February 28, 2006 and stated his "paranoia symptoms [became] worse when [he] started Wellbutrin" and had only "improved when . . . taking Risperdol." Tr. 515. Burns, however, had not taken his Risperdol in two (2) days because he "lost it." *Id.* Burns was taken off Wellbutrin and his Risperdol dosage was increased. *Id.*

At a visit on March 7, 2006, Burns reported "feeling more psychotic" and "wanting to isolate." Tr. 514. However, Burns also reported he was "[s]leeping a

lot more" and his "dreams [were] not as psychotic as [they] used to be." *Id.* Burns also admitted to drinking Jack Daniels with his pain pills. *Id.* Despite noting Burns had glassy eyes and seemed slightly preoccupied, the doctor reported that Burns had normal psychomotor activity, maintained good eye contact, was cooperative and alert oriented, and his suicidal ideations only consisted of "weird thoughts." *Id.* Burns' dosage of Risperdol was increased, and he was advised to stay clean and sober. *Id.*

As the medical records show, although Burns complained of paranoia and reported suicidal ideations, Burns had good eye contact, was cooperative, alert and oriented, had congruent mood, and his memory was intact. Tr. 857, 515, 516. Also, while Burns complained about hearing voices, feeling paranoid, and becoming easily agitated, Burns' symptoms improved with medication. Tr. 439, 516, 858. Burns reported taking Risperdol and "feel[ing] so relaxed and not paranoid" and not "get[ting] angry or agitated with people." Tr. 516. Most notably, Burns denied any suicidal ideations, stating "I don't think I have even thought about it" and reported his homicidal ideations "[i]mproved from all day [to] every once in a while." *Id.*

The ALJ also considered Burns' medical records after March 2006 through August 2007, and noted that despite similar complaints, Burns was working and reported improved symptoms with medication. Tr. 22-23. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not

disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988), *see also Brooks v. Kijakazi*, 2021 WL 4973545, at *5 (S.D. Fla. Sept. 12, 2021) (affirming the Commissioner's decision where the record did not support doctor's opinion that schizophrenic claimant "experienced disabling delusions, hallucinations, disorganized thinking, and behavior, particularly when she was on her medication."). Thus, despite receiving a psychiatric diagnosis, there is nothing in the record indicating Burns' condition was disabling. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."), *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (the "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work").

Second, the ALJ did not err in discrediting Burns' subjective complaints. When a claimant attempts to prove disability based on testimony of pain or other symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); 20 C.F.R. § 404.1529(a); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors." *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019). Factors the ALJ may consider in assessing a claimant's complaints include:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions.

*Id.*; *see also Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 24, 2016).

As outlined above, Burns' medical records do not support that either his psychotic disorder or schizoaffective disorder, prior to attaining 22 years of age, were disabling. Burns responded well to treatment and reported improvement with overall symptoms. Burns also owned his own business, performed labor jobs, and drove rental machinery. Tr. 515, 516, 857, *see also* Tr. 418 (where Burns admitted to performing "laborer jobs", such as plumbing, "on and off from 2001 till 2006"). Thus, substantial evidence supports the ALJ's determination that Burns' subjective reports were "not consistent with the evidence record." Tr. 23. *See Whitmore v. Soc. Sec. Admin., Comm'r,* 2021 WL 1961926, at *3 (11th Cir. May 17, 2021) (affirming district court's decision to uphold Commissioner's denial of benefits

where claimant's subjective statements of pain were inconsistent with the treatment records and activities of daily living).

Third, to the extent Burns relies on the 2001 suicide attempt, the record shows this was the result of substance intoxication and not a mental impairment. Indeed, when Burns was evaluated at the hospital the following day, he reported that "he had a bad acid trip and cut his wrist" and that "if he was not high he would not have done it." Tr. 371. Additionally, during a psychiatric evaluation that same day, Burns denied any suicidal ideation, plan or intent, and none was noted. *Id.* Records also reveal Burns was alert, oriented to time, place, person and situation, and responsive with an intact memory. Tr. 372.

Finally, the opinions of the state agency medical examiners support the ALJ's RFC determination. *See* 20 C.F.R. 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); 20 C.F.R. § 404.1513a(b)(1). When considering the findings of a state agency medical or psychological consultant, the ALJ will look to factors "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant

provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii).

State agency examiners, Dr. Thomas Conger, Ph.D., and Dr. James A. Brown, Ph.D., opined that Burns had no limitations in the ability to understand, remember, or apply information; only mild limitations in interacting with others, moderate limitations in concentration, persistence and pace, and no limitations in the ability to adapt or manage himself. Tr. 111-12, 127-28. Both examiners determined Burns was moderately limited in the ability to maintain attention and concentration for extended periods. Tr. 113, 129. The ALJ's RFC adequately reflects these limitations by limiting Burns to work that needs little or no judgment and to the performance of simple duties and that can be learned in a short time. Tr. 20.

Thus, upon a review of the record and the parties' filings, the undersigned finds the Commissioner's decision to be supported by substantial evidence.

## VI. CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1. The Commissioner's decision denying CIB benefits be AFFIRMED.

2. Burns' motion to amend (ECF Doc. 47), seeking judgment in his favor be DENIED.

3. The clerk be directed to enter judgment in favor of the Commissioner and close the file.

Done at Pensacola, Florida, this 3rd day of January, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.